IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | * | |
| Plaintiff, | * | |
|  | * | Civil Action No. RDB-18-2046 |
| v. | * | |
| THE OWINGS GROUP, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This civil enforcement action brought by the Plaintiff the United States Securities and Exchange Commission ("SEC") concerns an investment program pursuant to which investors were to be compensated with shares in newly created public companies. The SEC alleged that the program was a fraud conducted by the individual Defendant Mark Johnson ("Johnson") through individual Defendants Kevin Drost ("Drost"), Brian Koslow ("Koslow"), and David Waltzer ("Waltzer") and the entity Defendants The Owings Group, LLC, Owings-1, LLC, Owings Capital Group, LLC, and Owings Capital Funds, LLC (the "Owings entities"). Ultimately, the individual Defendants Johnson, Drost, Koslow, and Waltzer consented to entries of judgment against them. (Drost Judgment, ECF No. 38; Johnson Judgment, ECF No. 62; Koslow Judgment, ECF No. 66, Waltzer Judgment, ECF No. 67.) Default judgment was entered against the Defendants The Owings Group, LLC, Owings-1, LLC, Owings Capital Group, LLC, and Owings Capital Funds, LLC. (ECF No. 101.) This Court granted the SEC's Motion for Voluntary Dismissal as to the Relief Defendants One Source Advisors,

LLC, Strategic Coaching, Inc. and MJSC Enterprises, LLC.[1] (ECF No. 87.) Accordingly, the only issues remaining before this Court are the respective monetary amounts of Judgments against the respective Defendants, any civil penalties, and the imposition of joint and several liability between Johnson and The Owings Group, LLC. (ECF No. 84.)

Specifically, the SEC requests that this Court issue Orders requiring Johnson to pay disgorgement of $681,554 and prejudgment interest of $117,540.47, of which $524,591 in disgorgement and $90,470.41 of prejudgment interest is joint and several with The Owings Group, LLC, in addition to a civil penalty of $3,178,880; requiring Drost to pay disgorgement of $255,750 and prejudgment interest of $36,339.87, and a civil penalty of $255,750; requiring Koslow to pay disgorgement of $142,058, prejudgment interest of $30,715.78, and a civil penalty of $142,058; requiring Waltzer to pay disgorgement of $149,204, prejudgment interest of $31,493.53, and a civil penalty of $149,204; and requiring The Owings Group, LLC to pay disgorgement of $524,591 and prejudgment interest of $90,470.41, jointly and several with Johnson. (ECF Nos. 68, 84.) An audio hearing was held on May 5, 2021.[2] *See* Loc. R. 105.6 (D. Md. 2018).

For the reasons stated on the record at the hearing and for the reasons herein, the SEC's Motion (ECF No. 84) is GRANTED IN PART and DENIED IN PART. Defendant Mark Johnson shall pay disgorgement of $681,554 and prejudgment interest of $117,540.47,

---

[1] A "relief defendant" or a "nominal defendant" is someone who is not accused of violating the securities laws but who is nevertheless in possession of funds that the violator passed along to him or her. *See supra* (citing *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191-2 (4th Cir. 2002) ("a nominal defendant is part of a suit only as the holder of assets that must be recovered in order to afford complete relief; no cause of action is asserted against a nominal defendant")).

[2] The hearing was held via audio pursuant to the circumstances created by the COVID-19 Pandemic. *See* Second Amended Standing Order 2021-04 (D. Md. 2021).

of which $524,591 in disgorgement and $90,470.41 of prejudgment interest is joint and several with The Owings Group, LLC, in addition to a civil penalty of $681,554, for a total judgment amount of **$1,480,648.47**. Defendant Drost shall pay disgorgement of $255,750 and prejudgment interest of $36,339.87, for a total judgment amount of **$292,089.87**. Defendant Koslow shall pay disgorgement of $142,058 and prejudgment interest of $30,715.78, for a total judgment amount of **$172,773.78**. Defendant Waltzer shall pay disgorgement of $149,204 and prejudgment interest of $31,493.53, for a total judgment of **$180,697.53**. Defendant The Owings Group, LLC shall pay disgorgement of $524,591 and prejudgment interest of $90,470.41, jointly and severally with Defendant Johnson, for a total judgment of **$615,061.41**. The Court has reduced the civil monetary penalty sought by the SEC for Defendant Johnson from $3,178,880 to $681,554. In addition, the Court will not impose civil monetary penalties on Defendants Drost, Koslow, and Waltzer.

## BACKGROUND

This civil enforcement action brought by the SEC concerns a fraudulent scheme conducted by Defendant Mark Johnson through Defendants The Owings Group, LLC, Owings-1, LLC, Owings Capital Group, LLC, and Owings Capital Funds, LLC (collectively, the "Owings entities") and individual Defendants Kevin Drost, Brian Koslow, and David Waltzer. (Compl., ECF No. 1.) Through the Owings entities, Johnson offered investors the opportunity to invest in his Initial Registration Program ("IRP"). (*Id.* ¶¶ 26-27.) Defendants Drost, Koslow, and Waltzer provided substantial assistance as salesmen. (*Id.* ¶ 1.) The IRP was supposed to provide a streamlined method by which The Owings Group, LLC via the Owings entities, could take a company public and be compensated with shares in the newly

public company. (*Id.* ¶¶ 27, 30.) However, Defendants did not have any such "streamlined method" to take companies public nor did Defendants register any securities with the SEC. (*Id.* ¶¶ 11-14, 32.) In order to attract investors, Johnson and his related entities utilized various fraudulent methods, including, *inter alia*, creating fake escrow accounts, creating shell companies, and making false and misleading statements to secure investments. (*Id.* ¶¶ 48-73, 77-81, 86-89.) The SEC asserts that the Defendants have lost all investor funds except for payments made to early investors using new investors' money. (*Id.* ¶ 102.)

The SEC filed this action on July 6, 2018 against Defendants Johnson, Drost, Koslow, Waltzer, and the Owings entities, and against Relief Defendants One Source Advisors, LLC, Strategic Coaching, Inc. and MJSC Enterprises, LLC. (Compl., ECF No. 1.) The individual Defendants Johnson, Drost, Koslow, and Waltzer have each consented to entry of a judgment against them. (Drost Judgment, ECF No. 38; Johnson Judgment, ECF No. 62; Koslow Judgment, ECF No. 66, Waltzer Judgment, ECF No. 67.) Each judgment provides that, upon motion by the SEC, the Court will determine whether to order disgorgement and/or a monetary penalty. (*Id.*) On October 14, 2020, this Court granted the SEC's Motion for Voluntary Dismissal of the Relief Defendants One Source Advisors, LLC, Strategic Coaching, Inc. and MJSC Enterprises, LLC. (ECF No. 87.)

On March 5, 2021, after a status call with the parties off the record, this Court entered Default Judgment against the non-answering Owings entities and granted the SEC's Motion for Judgment against Defendants Johnson, Drost, Koslow, and Waltzer pursuant to their consent. (ECF No. 101.) An audio hearing was conducted on May 5, 2021 to address the

respective monetary amounts of judgments, remedies, and joint and several liability if applicable. (ECF No. 102.)

## ANALYSIS

The SEC originally moved for monetary remedies and final judgment in May of 2020. (ECF Nos. 68, 69.) During the pendency of those motions, the Supreme Court of the United States issued its opinion in *Liu v. SEC*, 140 S. Ct. 1936 (2020), which analyzed courts' equitable authority to order disgorgement in SEC enforcement actions, including the propriety of the SEC's imposition of joint and several liability in disgorgement cases. In the wake of the *Liu* opinion, the SEC filed its Supplemental Motion (ECF No. 84), in which it revised its disgorgement and monetary penalty requests. The SEC now seeks a reduced amount of disgorgement against Defendants Johnson and The Owings Group, LLC. In addition, the SEC is no longer seeking disgorgement against the other Owings entities, namely Owings-1, LLC, Owings Capital Group, LLC, and Owings Capital Funds, LLC, and it is no longer seeking a civil monetary penalty against any entity Defendant. Finally, the SEC is specifically requesting a monetary penalty against each individual Defendant in the amount of his gross pecuniary gain. The SEC's disgorgement requests against Defendants Drost, Koslow, and Waltzer are unchanged.

   I.   **Disgorgement and Prejudgment Interest**

As this Court explained in *S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 782 (D. Md. 2009):

> "When securities fraud is found, courts may order disgorgement. Disgorgement is an equitable remedy designed to prevent the unjust enrichment of the wrongdoer and to deter others from violating the federal securities laws. Accordingly, disgorgement is not limited to an extraction of ill-gotten gains from the fraud. Indeed, the district court has broad discretion in determining whether to award disgorgement and in what amount. It is also recognized that

5

> the disgorgement calculation is inexact; it is impossible to say with certainty what portion of [a defendant's] profits is attributable to his securities violations. Therefore, a court's disgorgement calculation need only be a reasonable approximation of gains causally connected to the fraud. Finally, prejudgment interest may be included in the disgorgement amount, so as to prevent the defendant from profiting from his or her illegal conduct."

*S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 782 (D. Md. 2009) (internal citations omitted). The Supreme Court recently addressed the SEC's ability to obtain disgorgement in enforcement cases in *Liu v. SEC*, 140 S. Ct. 1936 (2020). In *Liu*, the Supreme Court held that disgorgement remains a permissible form of equitable relief under the Securities Exchange Act, 15 U.S.C. § 78u(d)(5), when the disgorgement award does not exceed a wrongdoer's net profits. 140 S. Ct. at 1949-50. In so holding, the Supreme Court also noted the difficulties that arise when the SEC seeks to impose "disgorgement liability on a wrongdoer for benefits that accrue to his affiliates, sometimes through joint and several liability, in a manner sometimes seemingly at odds with the common-law rule requiring individual liability for wrongful profits." 140 S. Ct. at 1949 (citing *SEC v. Contorinis*, 743 F.3d 296, 302 (2d Cir 2014); *SEC v. Clark*, 915 F.2d 439, 454 (9th Cir. 1990); *SEC v. Whittemore*, 659 F.3d 1, 10 (D.C. Cir. 2011)).

The *Liu* Court declined, however, to "wade into all the circumstances where an equitable profits remedy might be punitive [and thereby prohibited] when applied to multiple individuals" because of the "wide spectrum of relationships between participants and beneficiaries of unlawful schemes—from equally culpable codefendants to more remote, unrelated" arrangements. *Id.* Instead, the Court remanded for the United States Court of the Appeals for the Ninth Circuit to determine whether the married couple in question, who were both involved in the fraudulent scheme, could be found liable as partners in wrongdoing or whether individual liability was requires. *Id.* Specifically, the Court identified three areas of

6

inquiry for the lower courts to ensure that disgorgement orders are consistent with traditional equity practice: (1) whether the disgorgement order is for the benefit of investors; (2) the appropriateness of joint and several liability; and (3) whether the deduction of legitimate business expenses is appropriate in each case.

In this case, the SEC seeks disgorgement against Johnson, The Owings Group, LLC, Drost, Koslow, and Waltzer. In support of these claims, the SEC has provided two declarations from Margaret Mary Vizzi, a certified public accountant and a certified fraud examiner, who reviewed the financial records of The Owings Group, LLC, including bank statements, deposits, cancelled checks, wire transfers, and signature cards. (*See* ECF Nos. 68-2, 84-2.) Those financial records reflected a total of approximately $4,435,880 deposited from about 50 investors. (*Id.*) In its original Motion, the SEC requested $2,213,368 in disgorgement from Defendants Johnson and The Owings Group, LLC, which reflected the amount of investor proceeds received within the limitations period minus funds that were returned to investors and minus the amount being sought in disgorgement from the other Defendants. (ECF No. 68 at 4.) Now, in light of *Liu*, the SEC requests a reduced disgorgement amount from Johnson and The Owings Group, LLC, deducting certain legitimate business expenses incurred by them. (ECF No. 84.) The SEC's disgorgement requests as to Defendants Drost, Koslow, and Waltzer remain unchanged post-*Liu*. (*Id.*) Although Defendants Johnson, Koslow, and Waltzer dispute the SEC's disgorgement amounts for a variety of reasons addressed below, the Court is satisfied that the SEC's requested disgorgement amounts represent reasonable approximations of the gains causally connected to the fraud.

### A. Joint and Several Liability is appropriate between Johnson and The Owings Group, LLC.

Johnson does not dispute that disgorgement against him individually in the amount of $156,963 is appropriate based on the compensation he received from The Owings Group, LLC. However, Johnson contests the SEC's imposition of an additional $524,591 in disgorgement against him, jointly and severally with The Owings Group, LLC. He argues that the Supreme Court's opinion in *Liu* forecloses the SEC's ability to impose joint and several liability in this case because Johnson did not personally receive or share in more than 4% of the money collected by The Owings Group, LLC from investors.

The holding in *Liu*, however, is not as broad as Johnson suggests. The crux of the Supreme Court's holding was its reaffirmation that disgorgement is a permissible form of relief under Section 78u(d)(5) of the Securities Exchange Act, with a limited scope of such relief to "net profits," allowing a wrongdoer to deduct legitimate business expenses from an order of disgorgement. As explained above, the Court in *Liu* expressly declined to determine whether joint and several liability was appropriate in that case and provided "principles that may guide the lower courts' assessment" on this issue. 140 S. Ct. at 1947-48. As to joint and several liability, the Supreme Court noted that "[t]he common law did…permit liability for partners engaged in concerted wrongdoing" and relevant facts that may support such a finding include whether one partner was a "mere passive recipient of profits," whether their finances were commingled, if one partner "did not enjoy the fruits of the scheme," or "other circumstances that would render a joint-and-several disgorgement order unjust." *Id.* at 1949.

*Liu*'s holding did not eliminate a court's authority to order disgorgement in a joint and several manner. Both prior to and after *Liu*, this Court and other District Courts have consistently ordered a person who controls an entity to disgorge the illegitimate funds received

by that entity.  *See SEC v. North Star Finance, LLC*, Case No. GJH-15-1339, 2019 WL 3860321, at *10 (D. Md. Aug. 15, 2019);  *SEC v. Yang*, Case No. 5:15-cv-02387-SVW-KK, 2021 WL 1234886, at *9 (C.D. Cal. Feb. 16, 2021); *SEC v. Smith*, Case No. CV 20-1056-PA (SHKx), 2020 WL 6712257 (C.D. Cal. Oct. 19, 2020); *SEC v. Curative Biosciences, Inc.*, Case No. 8:18-cv-00925-SVW-E, Dkt. No. 177, at 10, 13 (C.D. Cal. Oct. 22, 2020).  Indeed, the lower court in *Liu* ordered the individual defendants to disgorge amounts that went into a corporate entity they owned and controlled.  *See SEC v. Liu*, 262 F. Supp. 3d 957-76 (C.D. Cal. 2017).  The Supreme Court's holding did not disturb that part of the lower court's ruling and did not suggest that ordering individuals to disgorge funds received by corporate entities under their control is improper.

As the Chief Executive Manager and controlling member of The Owings Group, LLC, Johnson "had the power to make decisions on behalf of the company, hire and fire employees, control the Owings bank accounts, and develop and implement company polices."  (Compl. ¶ 15, ECF No. 1.))  Imposing joint and several liability on Johnson and an entity he controls is entirely consistent with *Liu* and with established precedent in securities enforcement cases.  Here, the SEC has provided evidence that $524,591 of investor funds were deposited in accounts in the name of The Owings Group, LLC, an entity controlled and managed by Defendant Johnson and which he used to perpetrate his fraud.  These business expenses include: $52,225 in "advertising and promotion expenses," $210,394 in "event and trade show fees," and $261,972 in "airfare, automobile, hotel, meal and entertainment, and travel expenses."  (Vizzi Supp. Decl. ¶¶ 6-8, ECF No. 84-2.)  These expenses are not legitimate expenses to be deducted because they were used to solicit investors into the fraudulent

scheme. (*Id.*) These amounts are a "reasonable approximation" of the ill-gotten gains, and any risk of uncertainty in calculating these disgorgement amounts falls on the wrongdoer whose illegal conduct created the uncertainty. *See SEC v. Resnick*, 406 F. Supp. 2d 773, 782 (D. Md. 2009); *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995)). Johnson has not overcome this burden. Accordingly, Johnson shall be ordered to pay his individual compensation of $156,963 in disgorgement, in addition to $524,591 in disgorgement jointly and severally with The Owings Group, LLC.

### B. Tracing is not required.

Johnson, Koslow, and Waltzer argue that the SEC must trace the ill-gotten funds attributable to each of them. First of all, nothing in the *Liu* opinion requires that the SEC trace the ill-gotten funds. Nor does other case law require the tracing suggested by Defendants in this context. The "requirement of a causal relationship between a wrongful act and the property to be disgorged does not imply that a court may order a malefactor to disgorge only the actual property obtained by means of his wrongful act." *SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000). Indeed, "disgorgement is an equitable obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset," and "the causal connection required is between the amount by which the defendant was unjustly enriched and the amount he can be required to disgorge." *Id.*; *see also SEC v. Miller*, 808 F.3d 623, 635-46 (2d Cir. 2015). Accordingly, the SEC need not identify or trace the funds in each of the Defendants' possession. *See FTC v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir. 2011) ("[T]he Federal Reporter is replete with instances in which judges of this Court deeply familiar with equity practice have permitted the SEC to obtain disgorgement without

any mention of tracing. Indeed it is by now so uncontroversial that tracing is not required in disgorgement cases that we recently rejected an argument to the contrary via summary order.") (internal citations omitted).

### C. The Requested Disgorgement Amounts for Koslow and Waltzer are Appropriate.

Koslow and Waltzer argue that the disgorgement amounts sought by the SEC against them contain legitimate business expenses that should be deducted. In support, they provide an exhibit with spreadsheets entitled "Breakdown of Commissions Paid Out," and list check amounts for various "expense reimbursement[s]." They assert that $50,232.01 should be deducted from Koslow's disgorgement figure, and that $44,678.61 should be deducted from Waltzer's disgorgement figure.[3] (ECF No. 98-1.) The supporting exhibit, however, is unsworn and does not provide any detail as to what the expenses were. (*Id.*) Such a conclusory exhibit does not overcome the SEC's showing of a "reasonable approximation" of the respective ill-gotten gains, which reflect compensation payments of $142,050 to Koslow and $149,240 to Waltzer. (Vizzi Decl. ¶¶ 10-13, ECF No. 68-2.) Moreover, any "doubts are to be resolved against the defrauding party." *Resnick*, 604 F. Supp. 2d at 782; *see also SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983). Accordingly, the Court finds appropriate the requested disgorgement amounts as to Koslow and Waltzer.[4]

### D. The Prejudgment Interest Amounts are Appropriate.

---

[3] It should be noted that, at the May 5, 2021 hearing, Koslow and Waltzer conceded that they are at least liable for disgorgement in the respective amounts of $97,379.39 and $98,928, plus prejudgment interest.

[4] While Defendant Drost did not challenge or otherwise respond to the SEC's disgorgement request of $255,750, the Court is also satisfied that the SEC's request is a reasonable approximation of Drost's ill-gotten gains.

11

On the matter of prejudgment interest, the SEC has submitted the Declaration of Derek Bentsen and the Supplemental Declaration of Derek Bentsen, in which Mr. Bentsen states under penalty of perjury that, based on the SEC's prejudgment interest calculator which uses the same rate as the Internal Revenue Service, 26 U.S.C. § 6621(a)(2) and compounds interest quarterly, the appropriate amount of prejudgment interest on Johnson's disgorgement award is $117,540.47, of which $90,470.41 is joint and several with The Owings Group, LLC; the appropriate amount of prejudgment interest on The Owings Group, LLC's disgorgement award is $90,470.41, jointly and severally with Johnson; the appropriate amount of prejudgment interest on Drost's disgorgement award is $36,339.87; the appropriate amount of prejudgment interest on Koslow's disgorgement award is $30,715.78; and the appropriate amount of prejudgment interest on Waltzer's disgorgement award is $31,493.53. (ECF Nos. 68-3, 84-1.) Defendants do not challenge these interest calculations, but do, as noted above, dispute the underlying principal figures. Having determined that Defendants shall disgorge the underlying amounts sought by the SEC, however, it follows that they shall also be ordered to pay the respective amounts sought in prejudgment interest.

Thus, Johnson shall be ordered to pay a total of **$799,094.47** in disgorgement and interest, of which $615,061.41 is joint and several with The Owings Group, LLC. The Owings Group, LLC shall be ordered to pay a total of **$615,061.41** in disgorgement and prejudgment interest, jointly and severally with Johnson. Drost shall be ordered to pay a total of **$292,089.87** in disgorgement and prejudgment interest. Koslow shall be ordered to pay a total of **$172,773.78** in disgorgement and prejudgment interest. Waltzer shall be ordered to pay a total of **$180,697.53** in disgorgement and prejudgment.

## II.     Civil Penalty

Civil monetary penalties "are intended to punish, and label defendants wrongdoers." *Gabelli v. SEC*, 568 U.S. 442, 452 (2013). The Consent Judgments in this case also provide for the imposition of civil penalties to be determined by the Court pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e). (*See* Drost Judgment, ECF No. 38; Johnson Judgment, ECF No. 62; Koslow Judgment, ECF No. 66, Waltzer Judgment, ECF No. 67.) In its Motion, the SEC requests a maximum third tier penalty of: $3,178,880 against Johnson; $255,750 against Drost; $142,050 against Koslow; and $149,240 against Waltzer. (ECF No. 84 at 6.)

A "third tier" violation is one that "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(C). Pursuant to the Securities Act, a third tier violation may be calculated in either of two ways: (1) a court may impose a fixed amount multiplied by the number of violations or the number of persons defrauded or (2) a court may impose a penalty equal to a defendant's gross pecuniary gain. *See SEC v. North Star Finance, LLC*, Case No. GJH-15-1339, 2019 WL 3860321, at *10 (D. Md. Aug. 15, 2019) (citing *SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007); *SEC v. Kenton Cap., Ltd.*, 69 F. Supp. 2d 1, 17 n.15 (D.D.C 1998); *SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1192-93 (D. Nev. 2009)). To decide the appropriate amount of a civil penalty, courts analyze:

> (1) The egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial

losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 391 (S.D.N.Y. 2010) (citations omitted).

Here, the SEC seeks penalties that represent each individual Defendants' respective pecuniary gains as opposed to a statutory penalty based on the number of violations, which the SEC asserts more fairly reflects each particular Defendants' culpable conduct. The SEC argues that a third tier violation is appropriate because the individual Defendants' conduct both involved fraud and each of the individual defendants engaged in recurrent knowing, egregious conduct that caused substantial investor losses. While the Court agrees with the SEC that a *reduced* monetary penalty is appropriate against Defendant Johnson as the orchestrator of the fraud, it does not find a civil monetary penalty appropriate against Defendants Drost, Koslow, and Waltzer.

While Defendant Drost was employed by and a partner in the Owings entities, his role is described as a "salesman." (Compl. ¶¶ 19, 36.) Defendants Koslow and Waltzer, also "salesmen," functioned as independent contractors and were never formally employed by any of the Owings entities. (*Id.* ¶¶ 20, 21.) The Complaint highlights the clear difference between Johnson's role in the scheme and the "salesmen" roles of Drost, Koslow, and Waltzer: "[b]y virtue of his role at Owings, Johnson had the ability to control, and did control, [Drost's, Koslow's, and Waltzer's] conduct." (*Id.* ¶ 36.) Indeed, the majority of the SEC's Complaint details the steps taken by Johnson alone in developing the fraudulent scheme, and importantly, the concerns expressed by Drost, Koslow, and Waltzer over Johnson's and the Owings

14

entities' predicaments. (*Id.* ¶¶ 26-35, 77-85, 94-96, 101.) Finally, at the May 5, 2021 hearing, all of the Defendants indicated their dire financial situations and inability to pay any monetary penalty.

In light of the foregoing considerations and exercising its discretion, the Court finds that the SEC's requested civil penalty of $3,178,880 against Defendant Johnson is not justified and would be unduly punitive. Instead, the Court finds the disgorgement amount of $681,554 more appropriate, as the SEC itself sought to impose the disgorgement amounts for Drost, Koslow, and Waltzer as their civil monetary amounts. The Court also finds that the SEC's requested civil penalties as to Drost, Koslow, and Waltzer are not justified. Drost, Koslow, and Waltzer functioned as "salesmen" of the fraudulent scheme created by Defendant Johnson. The record reflects that their roles were significantly less serious than that of Johnson. Taking into consideration their respective financial conditions, the degree of their knowledge, and their roles in the fraud, the Court finds that any civil monetary penalty against Defendants Drost, Koslow, or Waltzer would be unduly punitive and unnecessary. Accordingly, only Defendant Johnson shall be ordered to pay a total of **$681,554** as a civil penalty pursuant to the Consent Judgment.

## CONCLUSION

For the reasons stated on the record at the May 5, 2021 hearing and for the foregoing reasons, the SEC's Motion (ECF No. 84) is GRANTED IN PART and DENIED IN PART. Defendant Mark Johnson shall pay disgorgement of $681,554 and prejudgment interest of $117,540.47, of which $524,591 in disgorgement and $90,470.41 of prejudgment interest is joint and several with The Owings Group, LLC, in addition to a civil penalty of $681,554, for

a total judgment amount of **$1,480,648.47**.  Defendant Drost shall pay disgorgement of $255,750 and prejudgment interest of $36,339.87, for a total judgment amount of **$292,089.87**.  Defendant Koslow shall pay disgorgement of $142,058 and prejudgment interest of $30,715.78, for a total judgment amount of **$172,773.78**.  Defendant Waltzer shall pay disgorgement of $149,204 and prejudgment interest of $31,493.53, for a total judgment of **$180,697.53**.  Defendant The Owings Group, LLC shall pay disgorgement of $524,591 and prejudgment interest of $90,470.41, jointly and severally with Defendant Johnson, for a total judgment of **$615,061.41**.  The Court will not impose civil monetary penalties on Defendants Drost, Koslow, and Waltzer.

    Separate Final Judgment Orders follow.

    Dated:  May 12, 2021

                                                                 _____/s/_____
                                                                   Richard D. Bennett
                                                                   United States District Judge